**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JODY MOREHOUSE, | Case No. 1:25-cv-00670-KES-SAB-HC |
| Petitioner, | FINDINGS AND RECOMMENDATION RECOMMENDING DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS AND DENIAL OF PETITIONER'S MOTION TO STAY |
| v. | |
| WARDEN, | |
| Respondent. | (ECF No. 20) |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**I.**

**BACKGROUND[1]**

In 2016, defendant was arrested and charged in connection with a carjacking.[2] In 2017, the parties waived a jury trial and the trial court[3] convicted defendant of the following six offenses: carjacking (§ 215, subd. (a); count 1), making criminal threats (§ 422; count 2), misdemeanor vandalism (§ 594, subd. (b)(1); count 3), evading a peace officer with wanton disregard for safety (Veh. Code, § 2800.2; count 4), second degree robbery (§ 212.5, subd. (c); count 5), and assault with a deadly weapon (§ 245, subd. (a)(1); count 6). The court also found that defendant personally used a deadly weapon in the commission of carjacking, making criminal threats, and robbery (§ 12022, subd. (b)(1)), that he suffered a prior serious or violent felony conviction for purposes of "Three Strikes" law sentencing and the prior felony conviction enhancement allegation (§§ 667, subd.

---

[1] The Court relies on the California Court of Appeal's October 9, 2023 opinion for this summary of the procedural history.
[2] Pursuant to defendant's request and on our own motion, we take judicial notice of our prior nonpublished opinion in *People v. Morehouse* (Oct. 30, 2020, F076241), and the record in that case. (Evid. Code, §§ 452, subd. (d), 459.)
[3] The Honorable Gary T. Friedman.

1

(a)(1), (b)–(i), 1170.12, subds. (a)–(d)), and that he served two prior prison terms (§ 667.5, former subd. (b)).

Pursuant to the Three Strikes law, the trial court sentenced defendant to the upper term of 18 years for carjacking, with an additional one year for the weapon enhancement, five years for the prior felony conviction enhancement, and one year for one prior prison term enhancement. For making criminal threats, the court imposed a consecutive term of one year four months, with an additional four months for the weapon enhancement; and for evading a peace officer, the court imposed a consecutive term of one year four months. The court also imposed and stayed the following terms pursuant to section 654: a 10-year upper term for robbery, an eight-year upper term for assault, and a 180-day jail term for vandalism.

On appeal, defendant claimed that he was entitled to have his sentence for criminal threats stayed under section 654 and, in supplemental briefing, he requested remand under Senate Bill No. 1393[4] to allow the court to determine whether to strike the five-year prior felony conviction enhancement. In addition, he requested remand for a hearing on his eligibility for mental health diversion under section 1001.36.[5]

Pre-*Frahs*, this court rejected defendant's claim that section 1001.36 applied retroactively; stayed his sentence for criminal threats under section 654; and, with one justice dissenting, remanded for resentencing under sections 667, subdivision (a)(1), and 1385 as amended by Senate Bill 1393. (*People v. Morehouse* (July 30, 2019, F076241) [nonpub. opn.].) The California Supreme Court granted review and transferred the case back after deciding *Frahs*. In view of *Frahs*, this court found that defendant was entitled to a conditional limited remand to determine whether he was eligible for mental health diversion, which rendered his Senate Bill 1393 claim moot. The court reaffirmed modification of the judgment to stay the criminal threats sentence under section 654, and in light of Senate Bill No. 136,[6] struck the two prior prison term enhancement findings and the one-year sentence enhancement imposed. (*People v. Morehouse* (Oct. 30, 2020, F076241) [nonpub. opn.].)

Remittitur issued in December 2020 and in June 2022, following an evidentiary hearing, the trial court[7] denied mental health diversion and declined to strike the five-year prior felony conviction enhancement. The court resentenced defendant to an aggregate term of 25 years 4 months, comprised of the upper term of nine years for carjacking, doubled for the strike, one year for the weapon enhancement, and five years for the prior felony conviction enhancement; and one year four months for evading a peace officer. The court imposed upper terms, stayed under section 654, on the remaining felony counts, and imposed and stayed a 180-day jail term for misdemeanor vandalism.

People v. Morehouse, No. F084493, 2023 WL 6548336, at *1–2 (Cal. Ct. App. Oct. 9, 2023) (footnotes in original).

---

[4] Senate Bill No. 1393 (2017–2018 Reg. Sess.) (Senate Bill 1393), amending sections 667 and 1385, effective January 1, 2019.
[5] Section 1001.36 was added to the Penal Code by Assembly Bill No. 1810, effective June 27, 2018 (Assembly Bill No. 1810 (2017–2018 Reg. Sess.) (Assembly Bill 1810).
[6] Senate Bill No. 136 (2019–2020 Reg. Sess.) (Senate Bill 136), amending section 667.5, effective January 1, 2020.
[7] The Honorable Brian M. McNamara.

2

On October 9, 2023, the California Court of Appeal, Fifth Appellate District affirmed the judgment. Morehouse, 2023 WL 6548336, at *7. On December 27, 2023, the California Supreme Court denied the petition for review. (ECF Nos. 18-13, 18-14.) On January 26, 2024, the Kern County Superior Court denied a petition for writ of habeas corpus. (ECF Nos. 18-15, 18-16.) On May 9, 2024, the California Court of Appeal, Fifth Appellate District denied a petition for writ of habeas corpus. (ECF Nos. 18-17, 18-18.) On June 26, 2024, the California Supreme Court denied the petition for review. (ECF Nos. 18-19, 18-20.)

On September 18, 2024, Petitioner filed a petition for writ of habeas corpus in the Sacramento Division of the United States District Court for the Eastern District of California. (ECF No. 10.) On September 20, 2024, Petitioner filed a first amended petition ("FAP"), raising the following claims for relief: (1) sentencing Petitioner to the upper term without a jury finding true any aggravating factors; (2) ineffective assistance of trial counsel; and (3) ineffective assistance of appellate counsel. (ECF No. 12.) On December 2, 2024, Respondent filed an answer. (ECF No. 19.) On December 16, 2024, Petitioner filed a motion to stay. (ECF No. 20.) On January 13, 2025, Respondent filed an opposition. (ECF No. 23.) Petitioner was granted until February 24, 2025, to file a reply in support of his motion to stay and until March 17, 2025, to file a traverse. (ECF No. 25.) However, to date, no reply or traverse have been filed, and the time for doing so has passed. On June 4, 2025, this case was transferred to the Fresno Division. (ECF No. 26.)

## II.

## STATEMENT OF FACTS[8]

> The victim in this case was a custodian at an adult school in Bakersfield. His shift ended at 10:00 p.m. and, around that time, he was sitting inside his car in the parking lot with the engine running. Someone pounded on the driver's side window and, thinking the person might be a student who needed something, the victim got out and locked the car using the key fob in his pocket. He left the engine running.
>
> Defendant said something, but the victim did not understand what it was. Defendant then repeatedly demanded the keys to the car. The victim eventually

---

[8] The Court relies on the California Court of Appeal's October 30, 2020 opinion for this summary of the facts of the offense. See Vasquez v. Kirkland, 572 F.3d 1029, 1031 n.1 (9th Cir. 2009).

realized what defendant was asking for and said, "[O]h, you are trying to carjack me." Defendant responded, "[Y]eah, give me your keys." The victim told defendant the keys were in the car.

Defendant pulled a 10-inch knife from a knapsack, held it horizontally approximately one foot from the victim's neck, and repeated his demand for the victim's car keys. After the victim again said the keys were in the car, defendant told the victim that he had a gun and stated "[I]f you don't give me the keys I'm going to shoot you." The victim never saw a gun, but he turned around and fled in panic, calling 911 as he ran. Defendant chased the victim for approximately 40 feet and then stopped. Although the victim did not see defendant getting into his car, he saw defendant driving away in it.

A short while later, an officer saw a car that matched the description of the victim's stolen car and commenced pursuit. After initially yielding, defendant took off and led officers on a high-speed chase. He eventually stopped and was taken into custody. The victim identified defendant and the knife used in the crime, which officers located inside the car. The rear passenger window on the driver's side had been broken out.

People v. Morehouse, No. F076241, 2020 WL 6375556, at *2–3 (Cal. Ct. App. Oct. 30, 2020).

## III.

## STANDARD OF REVIEW

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged convictions arise out of the Kern County Superior Court, which is located within the Eastern District of California. 28 U.S.C. § 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc). The instant petition was filed after the enactment of AEDPA and is therefore governed by its provisions.

Under AEDPA, relitigation of any claim adjudicated on the merits in state court is barred unless a petitioner can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

4

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Harrington v. Richter, 562 U.S. 86, 97–98 (2011); Lockyer v. Andrade, 538 U.S. 63, 70–71 (2003); Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id. In addition, the Supreme Court decision must "'squarely address [] the issue in th[e] case' or establish a legal principle that 'clearly extend[s]' to a new context to the extent required by the Supreme Court in . . . recent decisions"; otherwise, there is no clearly established Federal law for purposes of review under AEDPA. Moses v. Payne, 555 F.3d 742, 754 (9th Cir. 2009) (quoting Wright v. Van Patten, 552 U.S. 120, 125 (2008)); Panetti v. Quarterman, 551 U.S. 930 (2007); Carey v. Musladin, 549 U.S. 70 (2006). If no clearly established Federal law exists, the inquiry is at an end and the Court must defer to the state court's decision. Musladin, 549 U.S. 70; Wright, 552 U.S. at 126; Moses, 555 F.3d at 760.

If the Court determines there is governing clearly established Federal law, the Court must then consider whether the state court's decision was "contrary to, or involved an unreasonable application of, [the] clearly established Federal law." Lockyer, 538 U.S. at 72 (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412–13; see also Lockyer, 538 U.S. at 72. "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character

5

or nature,' or 'mutually opposed.'" Williams, 529 U.S. at 405 (quoting Webster's Third New International Dictionary 495 (1976)). "A state-court decision will certainly be contrary to [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." Id. If the state court decision is "contrary to" clearly established Supreme Court precedent, the state decision is reviewed under the pre-AEDPA de novo standard. Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc).

"Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411; see also Lockyer, 538 U.S. at 75–76. The writ may issue only "where there is no possibility fair minded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Richter, 562 U.S. at 102. In other words, so long as fairminded jurists could disagree on the correctness of the state court's decision, the decision cannot be considered unreasonable. Id. If the Court determines that the state court decision is objectively unreasonable, and the error is not structural, habeas relief is nonetheless unavailable unless the error had a substantial and injurious effect on the verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

The Court looks to the last reasoned state court decision as the basis for the state court judgment. Wilson v. Sellers, 584 U.S. 122, 125 (2018); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this Court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other

6

explanation for the state court's decision is more likely." Id. at 99–100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

Where the state courts reach a decision on the merits but there is no reasoned decision, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98. This Court "must determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Richter, 562 U.S. at 102.

## IV.

## REVIEW OF CLAIMS

### A. Sentencing Claim

In his first claim for relief, Petitioner asserts that the resentencing court imposed the upper term for Count I without stating any aggravating factors that were pleaded and found true by the jury, in violation of the Constitution. (ECF No. 12 at 6.) On direct appeal, Petitioner's claim regarding his aggravated upper-term sentence appeared to be limited to a challenge under California Penal Code section 1170. (ECF No. 18-6.) The California Court of Appeal found the claim procedurally defaulted for failure to object at trial, but it addressed Petitioner's claim of ineffective assistance of trial counsel for failure to object to the upper-term sentence. Morehouse, 2023 WL 6548336, at *3–7. Petitioner appears to have first raised the claim challenging his upper-term sentence on federal constitutional grounds in his state habeas proceedings. (ECF No. 18-15, 18-17, 18-19.) The California Court of Appeal denied Petitioner's state habeas petition,

///

citing to In re Waltreus, 62 Cal. 2d 218, 225 (1965). (ECF No. 18-18.) The California Supreme Court summarily denied the petition for review. (ECF No. 18-20.)

As federal courts review the last reasoned state court opinion, the Court will "look through" the California Supreme Court's summary denial of the petition for review and examine the decision of the California Court of Appeal denying Petitioner's state habeas petition. See Wilson, 584 U.S. at 125. The California Court of Appeal denied Petitioner's state habeas petition, citing to In re Waltreus. (ECF No. 18-18.) "California's *In re Waltreus* rule provides that 'habeas corpus ordinarily cannot serve as a second appeal.' Thus, under the *In re Waltreus* rule the California [state court] will not review in a habeas petition any claim raised on direct appeal." Hill v. Roe, 321 F.3d 787, 789 (9th Cir. 2003) (quoting In re Waltreus, 62 Cal. 2d at 225). The "United States Supreme Court [has] held that an *In re Waltreus* citation is neither a ruling on the merits nor a denial on procedural grounds and, therefore, has no bearing on a California prisoner's ability to raise a federal constitutional claim in federal court." Hill, 321 F.3d at 789 (citing Ylst v. Nunnemaker, 501 U.S. 797, 805 (1991)).

There does not appear to be a merits decision on Petitioner's federal constitutional claim regarding the imposition of the upper term for Count I without stating any aggravating factors that were pleaded and found true by the jury. Respondent contends that "[i]t may very well be that the state habeas court determined that the direct appeal decision on the ineffective assistance claim resolved the Sixth Amendment claim. But, regardless, the state court's determination that it decided the Sixth Amendment claim is binding here." (ECF No. 19 at 17 n.6.) Respondent applies AEDPA deference in the answer, arguing that "Petitioner has not shown that the state court's rejection of his claim was unreasonable under any clearly established Supreme Court precedent." (Id. at 14.)

The Court "need not determine whether AEDPA's deferential standard of review applies in this situation" because courts can "deny writs of habeas corpus under § 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on *de novo* review." Berghuis v. Thompkins, 560 U.S. 370, 390 (2010) (internal citations omitted).

8

In Apprendi v. United States, 530 U.S. 466 (2000), the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. In Blakely v. Washington, 542 U.S. 296 (2004), the Supreme Court clarified that "the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." 542 U.S. at 303 (emphasis in original). However, "when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant." United States v. Booker, 543 U.S. 220, 233 (2005).

Applying the Apprendi-Blakely line of cases, the Supreme Court found unconstitutional California's determinate sentencing law, which prescribed lower, middle, and upper term sentences and required courts to impose the middle term unless the court found that mitigating or aggravating circumstances, established by a preponderance of the evidence, justified a lower or upper term. Cunningham v. California, 549 U.S. 270, 274, 277–78 (2007). The Supreme Court distinguished Booker, noting that "[i]f the jury's verdict alone does not authorize the sentence, if, instead, the judge must find an additional fact to impose the longer term, the Sixth Amendment requirement is not satisfied." Cunningham, 549 U.S. at 290.

In response to Cunningham, the California legislature amended the determinate sentencing law, which retained the lower, middle, and upper terms, but eliminated the presumptive middle term and "provide[d] that the choice of the appropriate term would rest within the sound discretion of the court." Creech v. Frauenheim, 800 F.3d 1005, 1016 (9th Cir. 2015) (alteration in original) (internal quotation marks omitted) (quoting 2007 Cal. Stat. 93). The Ninth Circuit held that "it was not contrary to or an unreasonable application of clearly established Supreme Court law [for the state court] to conclude that California's revised determinate sentencing law, which provides trial courts with discretion to decide among three sentences, is constitutional under Apprendi." Creech, 800 F.3d at 1009.

///

1  "On January 1, 2022, pursuant to [California Senate Bill] 567, additional amendments to [California Penal Code] section 1170(b) took effect that once again made the middle term the presumptive sentence for a term of imprisonment unless certain circumstances existed." Guzman v. Horn, No. 5:24-cv-1997-VBF (MBK), 2025 WL 1674481, at *6 (C.D. Cal. May 21, 2025). California Penal Code section 1170(b) "was amended to prohibit imposition of an upper term sentence unless aggravating circumstances justify that term and the facts underlying any such circumstance, other than a prior conviction, 'have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial.'" People v. Lynch, 16 Cal. 5th 730, 742 (2024) (quoting Cal. Penal Code § 1170(b)(2)). "Allegations of prior convictions may be tried by the court alone and proven by certified records of conviction." Lynch, 16 Cal. 5th at 742 (citing Cal. Penal Code § 1170(b)(3)).

Here, the sentencing court found that Petitioner suffered a prior conviction within the meaning of the Three Strikes Law and suffered a prior serious felony conviction and served two prior prison terms. (3 RT 305.) Based on Petitioner's prior conviction, the sentencing court could sentence Petitioner to the upper term without the prior conviction having "been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." Cal. Penal Code § 1170(b)(2). See Apprendi, 530 U.S. at 490 ("*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (emphasis added)); Penton v. Malfi, 851 F. App'x 662, 662 (9th Cir. 2021) ("[T]he state trial court did not err in imposing the upper term sentence based on its finding that Petitioner's 'prior convictions are numerous and of increasing seriousness.'"); Rosenblum v. Yates, 489 F. App'x 165, 166 (9th Cir. 2012) ("*Cunningham* did not invalidate upper term sentences imposed as a result of prior convictions."). The fact that the sentencing court may not have complied with certain statutory requirements under the California Penal Code does not state a claim for federal habeas relief. See Wilson v. Corcoran, 562 U.S. 1, 5 (2010) (per curiam) ("[I]t is only noncompliance with federal law that renders a State's criminal judgment susceptible to collateral attack in the federal courts."); Estelle v. McGuire, 502 U.S. 62, 67–68 (1991) ("We have stated many times that

'federal habeas corpus relief does not lie for errors of state law.'" (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990))). Based on the foregoing, the Court finds that Petitioner is not entitled to habeas relief on his first claim, and it should be denied.

### B. Ineffective Assistance of Counsel

In his second claim for relief, Petitioner asserts ineffective assistance of trial counsel for failing to object to the resentencing court's upper-term sentence. (ECF No. 1 at 6.) In third claim for relief, Petitioner asserts ineffective assistance of appellate counsel for failing to raise the issue of the resentencing court's upper-term sentence on appeal. (Id.)

1. *Strickland* Legal Standard

The clearly established federal law governing ineffective assistance of counsel claims is Strickland v. Washington, 466 U.S. 668 (1984). In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court must consider two factors. Id. at 687. First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687. The petitioner must show that counsel's representation fell below an objective standard of reasonableness and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. Richter, 562 U.S. at 105 ("The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." (citing Strickland, 466 U.S. at 690)). Judicial scrutiny of counsel's performance is highly deferential. A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 687. A reviewing court should make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at that time." Id. at 689.

Second, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Strickland, 466

1  U.S. at 693. "A reasonable probability is a probability sufficient to undermine confidence in the
2  outcome." Id. at 694. A court "asks whether it is 'reasonable likely' the result would have been
3  different. . . . The likelihood of a different result must be substantial, not just conceivable."
4  Richter, 562 U.S. at 111–12 (citing Strickland, 466 U.S. at 696, 693). A reviewing court may
5  review the prejudice prong first. See Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002).

When § 2254(d) applies, "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard." Richter, 562 U.S. at 101. Moreover, because Strickland articulates "a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). "The standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Richter, 562 U.S. at 105 (citations omitted). Thus, "for claims of ineffective assistance of counsel . . . AEDPA review must be 'doubly deferential' in order to afford 'both the state court and the defense attorney the benefit of the doubt.'" Woods v. Donald, 575 U.S. 312, 316–17 (2015) (quoting Burt v. Titlow, 571 U.S. 12, 15 (2013)). When this "doubly deferential" judicial review applies, the inquiry is "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Richter, 562 U.S. at 105.

2.  Trial Counsel

Petitioner asserts that trial counsel was ineffective for failing to object to the resentencing court's upper-term sentence. (ECF No. 1 at 6.) Respondent argues that the state court reasonably rejected a claim of ineffective assistance of trial counsel. (ECF No. 19 at 18.) This claim was raised on direct appeal to the California Court of Appeal, Fifth Appellate District, which denied the claim in a reasoned decision. The California Supreme Court summarily denied Petitioner's petition for review. As federal courts review the last reasoned state court opinion, the Court will "look through" the California Supreme Court's summary denial and examine the decision of the Tulare County Superior Court. See Wilson, 584 U.S. at 125.

///

In denying Petitioner's ineffective assistance of trial counsel claim, the California Court of Appeal stated:

### A. Legal Standard

To prevail on a constitutional claim of IAC, defendant " 'must satisfy a two-pronged showing: that counsel's performance was deficient, and that [he] was prejudiced, that is, there is a reasonable probability the outcome would have been different were it not for the deficient performance.' " (*People v. Woodruff* (2018) 5 Cal.5th 697, 736 (*Woodruff*), quoting *People v. Alexander* (2010) 49 Cal.4th 846, 888; accord, *Strickland v. Washington* (1984) 466 U.S. 668, 687 (*Strickland*).) " '[T]he standard for judging counsel's representation is a most deferential one.' (*Harrington v. Richter* (2011) 562 U.S. 86, 105 (*Richter*).) We 'must indulge a "strong presumption" that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight.' (*Bell v. Cone* (2002) 535 U.S. 685, 702.) 'Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.' (*Richter*, at p. 105.)" (*In re Long* (2020) 10 Cal.5th 764, 773.)

Therefore, a "defendant's burden [is] 'difficult to carry on direct appeal,' as a reviewing court will reverse a conviction based on [IAC] on direct appeal only if there is affirmative evidence that counsel had ' " 'no rational tactical purpose' " ' for an action or omission." (*People v. Mickel* (2016) 2 Cal.5th 181, 198, quoting *People v. Lucas* (1995) 12 Cal.4th 415, 437.) "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (*Strickland, supra*, 466 U.S. at p. 690; accord, *People v. Barrett* (2012) 54 Cal.4th 1081, 1105.) At issue here, " '[d]eciding whether to object is inherently tactical, and the failure to object will rarely establish ineffective assistance.' " (*People v. Carrasco* (2014) 59 Cal.4th 924, 985, quoting *People v. Hillhouse* (2002) 27 Cal.4th 469, 502.)

### B. No Error

In this case, the probation report, prepared in 2017, identified no mitigating circumstances and two aggravating circumstances: "The defendant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness"; and "The defendant's prior performance on probation, mandatory supervision, postrelease community supervision, or parole was unsatisfactory." (Cal. Rules of Court, rule 4.421(b)(2), (b)(5).) As previously stated, defendant was convicted following a court trial, and at the original sentencing, consistent with the probation report, the trial court found no factors in mitigation and the aforementioned two factors in aggravation. The court also specified that the aggravating factors "clearly outweigh[ed]" the nonexistent mitigating factors; and stated that defendant had been on unsupervised probation and parole for the past 20 years, and had been off parole for only seven months before committing the carjacking and related offenses.

Following remand in 2020 for proceedings under section 1001.36 pursuant to *Frahs* and, if necessary, resentencing, the record was well developed with respect to defendant's history and the facts underlying his convictions. After holding an evidentiary hearing, the trial court denied mental health diversion on the ground that it was unable to find defendant would not "pose an unreasonable risk of

13

danger to public safety, as defined in Section 1170.18, if treated in the community." (§ 1001.36, subd. (c)(4) [§ 1001.36, former subd. (b)(1)(F)].) The court then declined to exercise its discretion to strike the five-year prior felony conviction enhancement. (§ 667, subd. (a)(1).) With respect to both rulings, the court set forth its reasons in detail.

In arguing in favor of the court striking the prior felony conviction enhancement, trial counsel conceded that defendant had been in and out of the system for years without any significant stability, and he spent a lot of time incarcerated. However, she pointed out that the evidence of defendant's mental health disorders and substance abuse addiction could be considered as mitigating evidence, and that had he entered the juvenile system today, his needs would have been addressed differently. In response, the prosecutor noted that defendant's criminal history began in 1997, it had continued unabated, he had been on either probation or parole since then, and he incurred his first strike offense in 1999.

In denying relief from the prior felony conviction enhancement, the trial court focused on the trauma to the victim and defendant's decisions. The court also discussed the details of the crime and defendant's actions in more detail in denying mental health diversion. Although the probation report only listed two aggravating factors, the court's comments in denying both diversion and relief from the five-year prior felony conviction enhancement indicate that, had the court expressly addressed section 1170, additional aggravating factors might have applied. These include that "The crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness"; "The defendant has engaged in violent conduct that indicates a serious danger to society"; and "The defendant has served a prior term in prison or county jail under section 1170[, subdivision](h)." (Cal. Rules of Court, rule 4.421(a)(1), (b)(1), (b)(3).)

Given all of the circumstances in this case, trial counsel may well have made a tactical determination that objecting to the imposition of upper terms would have been of no benefit to defendant. First, counsel may have reasonably concluded that, had she objected in this case, any errors in form or substance under section 1170 could have and would have been easily remedied, resulting only in a delay in the proceedings with no tangible benefit to defendant. Second, the principal term in this case is carjacking and imposition of the lower or middle term would have translated into a reduction of defendant's 18-year term to a term of six or 10 years. (§ 215, subd. (b).) In light of the court's decision not to strike the five-year enhancement, counsel may have reasonably concluded that it would be futile to ask the court for an even greater sentence reduction through the imposition of a lower or middle term. For these reasons, we find no support in the record for defendant's claim that trial counsel's performance was deficient.

### C. No Prejudice

Finally, even if we were to assume that counsel erred, in view of the aforementioned circumstances, there is no reasonable probability of a more favorable outcome had the error not occurred. (*Woodruff, supra*, 5 Cal.5th at p. 739; see *Harrington v. Richter* (2011) 562 U.S. 86, 112 ["The likelihood of a different result must be substantial, not just conceivable."].) In the absence of both error and prejudice, defendant's IAC claim is foreclosed.

Morehouse, 2023 WL 6548336, at *5–7.

The Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). "When counsel focuses on some issues to the exclusion of others, there is a strong presumption that [counsel] did so for tactical reasons rather than through sheer neglect." Yarborough v. Gentry, 540 U.S. 1, 8 (2003). The Supreme Court has recognized that this "presumption has particular force where a petitioner bases his ineffective-assistance claim solely on the trial record, creating a situation in which a court 'may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive.'" Id. (quoting Massaro v. United States, 538 U.S. 500, 505 (2003)).

"The law . . . does not permit us to second-guess the trial attorney's strategy. Instead, 'every effort [must] be made to eliminate the distorting effect of hindsight. We must therefore resist the temptation 'to conclude that a particular act or omission was unreasonable' simply because it 'proved unsuccessful' at trial." Daire v. Lattimore, 818 F.3d 454, 465 (9th Cir. 2016) (quoting Strickland, 466 U.S. at 689). "[T]he relevant inquiry under Strickland is not what defense counsel could have pursued, but rather whether the choices made by defense counsel were reasonable." Atwood v. Ryan, 870 F.3d 1033, 1064 (9th Cir. 2017) (alteration in original) (internal quotation marks omitted) (quoting Siripongs v. Calderon, 133 F.3d 732, 736 (9th Cir. 1998)). Based on the foregoing, under AEDPA's "doubly deferential" review, Donald, 575 U.S. at 316, the Court finds that the state court's rejection of Petitioner's ineffective assistance of trial counsel claim was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of fact. The decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief for ineffective assistance of trial counsel, and the claim should be denied.

///

3. Appellate Counsel

Petitioner asserts ineffective assistance of appellate counsel for failing to raise the issue of the resentencing court's upper-term sentence on appeal. (ECF No. 1 at 6.) Respondent contends that Petitioner's ineffective assistance of appellate counsel claim is unexhausted and clearly meritless. (ECF No. 19 at 24.) Subsequently, Petitioner moved for a stay so that he could exhaust state remedies with respect to the ineffective assistance of appellate counsel claim. (ECF No. 20.)

It appears Petitioner's ineffective assistance of appellate counsel claim is unexhausted.[9] However, pursuant to 28 U.S.C. § 2254(b)(2), the Court may deny an unexhausted claim on the merits "when it is perfectly clear that the [petitioner] does not raise even a colorable federal claim." Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir. 2005) (adopting the standard set forth in Granberry v. Greer, 481 U.S. 129, 135 (1987)).

Appellate counsel does not have a constitutional obligation to raise every nonfrivolous issue on appeal. Jones v. Barnes, 463 U.S. 745, 754 (1983). Rather, the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." Smith v. Murray, 477 U.S. 527, 536 (1986) (quoting Jones, 463 U.S. at 751–52). Here, Petitioner claims that appellate counsel was ineffective for failing to raise the issue of the resentencing court's upper-term sentence on appeal. (ECF No. 1 at 6.) However, appellate counsel did in fact raise the issue of the resentencing court's upper-term sentence on appeal. Further, appellate counsel raised a claim of ineffective assistance of trial counsel for failing to object to the upper-term sentence. (ECF Nos. 18-6, 18-9.) As it is "perfectly clear" that Petitioner does not raise a colorable

---

[9] A petitioner in state custody who is proceeding with a petition for writ of habeas corpus must exhaust state judicial remedies. 28 U.S.C. § 2254(b)(1). A petitioner can satisfy the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider each claim before presenting it to the federal court. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); Duncan v. Henry, 513 U.S. 364, 365 (1995); Picard v. Connor, 404 U.S. 270, 276 (1971). To provide the highest state court the necessary opportunity, the petitioner must "fairly present" the claim with "reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief." Duncan, 513 U.S. at 365; Gray v. Netherland, 518 U.S. 152, 162-63 (1996). "Fair presentation requires that the petitioner 'describe in the state proceedings both the operative facts and the federal legal theory on which his claim is based so that the state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon his constitutional claim.'" Davis v. Silva, 511 F.3d 1005, 1009 (9th Cir. 2008) (citation omitted).

16

ineffective assistance of appellate counsel claim, the Court may deny Petitioner's unexhausted claim for relief on the merits under 28 U.S.C. § 2254(b)(2).[10]

# V.

# RECOMMENDATION

Based on the foregoing, the Court HEREBY RECOMMENDS that the petition for writ of habeas corpus be DENIED and Petitioner's motion to stay (ECF No. 20) be DENIED.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **THIRTY (30) days** after service of the Findings and Recommendation, any party may file written objections with the Court, **limited to fifteen (15) pages in length, including any exhibits**. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **August 7, 2025**

STANLEY A. BOONE
United States Magistrate Judge

---

[10] In light of this conclusion, the Court recommends that Petitioner's motion to stay be denied.

17